**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RONNIE WADE,**

                          **Plaintiff**

        **-against-**                                  **1:09-CV-1426**

**WOODLAND COMMONS, LLC; WOODLAND**
**TRUST; and TURTLE ROCK TRUST,**

                          **Defendants**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


## DECISION & ORDER

### I.      INTRODUCTION

        Plaintiff Ronnie Wade commenced this action *pro se* alleging violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL")

§ 198, *et seq.*  Plaintiff asserts that he was not paid wages and overtime compensation by

Defendants, and seeks $41,945.00 in compensation plus liquidated damages. See Compl.

¶ 1, dkt. # 1.  Presently before the Court are Plaintiff's motion for partial summary

judgment, dkt. # 26, and Defendants' cross-motion for summary judgment seeking to

dismiss Plaintiff's case.  Dkt. # 34.

### II.     STANDARD OF REVIEW

        On a motion for summary judgment the Court must construe the properly disputed

facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct.

1

1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  That is, "[s]ummary judgment is appropriate only if, after drawing all permissible factual inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011)(citing Anemone v. Metro. Transp. Auth., 629 F.3d 97, 113 (2d Cir. 2011)).  When considering cross-motions for summary judgment, a court "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002)(quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc., 996 F.2d at 1461.

### III.    BACKGROUND

Inasmuch as there are cross-motions for summary judgment, the Court will provide an overview of each side's factual assertions, and then discuss the application of the facts as they pertain to each motion in the Discussion section, below.

### a.      Defendants' Factual Assertions[1]

Woodland Commons is an apartment complex located in Stone Ridge, New York. The property consists of six buildings each containing eight apartments.  The property was previously owned by Woodland Trust.  Bradley B. Davis and Richard B. Davis were the sole trustees of Woodland Trust.   On January 9, 2007, Woodland Commons, LLC was formed.  Ownership of the Woodlands Commons property was thereafter acquired by Woodland Commons, LLC.  Bradley Davis and Richard Davis are the sole members of Woodland Commons, LLC.

On April 1, 2005, Plaintiff applied for the position of maintenance worker at Woodland Commons.  He was hired and began work for Woodland Trust in April of 2005. Plaintiff continued in this capacity working for Woodland Commons, LLC after it purchased Woodland Commons apartments.  Plaintiff was hired to work for Woodland Trust as a W-2 employee, working at the gross rate of $400.00 biweekly.  Plaintiff was never a contractual employee, and instead worked as a salaried employee for Woodland Commons and then Woodland Commons, LLC.   All Woodland Commons paychecks were issued biweekly.

Plaintiff worked at the rate of $400.00 biweekly until, at Plaintiffs request, Woodland Trust provided him with additional work at which time his gross salary was increased to $1,120.00 biweekly.  Plaintiff was eventually relieved of this additional responsibility during the pay period ending on June 6, 2008, and his gross salary was then adjusted to $600.00 biweekly.  Plaintiff remained at this salary until his arrest and incarceration on March 4, 2009.  Each year, Plaintiff was provided a federal tax W-2 Wage

---

[1]Defendants' factual assertions are taken from Richard Davis's affidavit, dkt. # 27.

3

and Tax Statement setting forth his yearly income and withheld taxes.

Plaintiff's job duties included the performance of general duties around Woodland Commons including but not limited to snow removal, lawn care and mowing, heating and cooling maintenance, plumbing, and general repair work.  Plaintiff was also responsible for work at various hours of the day including fixing heating, air conditioning, lock-outs, and snow removal.  His main responsibility was responding to no heat or no hot water complaints and various odd jobs, and his primary job duty was to remain "on call" for emergency maintenance situations.  Plaintiff was provided a cellular telephone and tenants at Woodland Commons were provided the number in case of emergencies.

Turtle Rock Apartments is an apartment complex located in New Paltz, New York consisting of four buildings each containing eight apartments.  The property is owned by Turtle Rock Trust.  Richard Davis and Bradley Davis are the sole trustees of Turtle Rock Trust.   Turtle Rock Trust has a separate federal tax identification number and bank account from Woodland Trust and Woodland Commons, LLC.   At the time Plaintiff was hired to work as a maintenance worker at Woodland Commons, Turtle Rock Apartments had repair and maintenance work performed by an independent contractor.  However, this contractor stopped performing work at Turtle Rock Apartments shortly after Plaintiff began work at Woodland Commons.  Plaintiff asked that he be allowed an opportunity to bid on the various maintenance work that needed to be performed at Turtle Rock Apartments, which he was allowed to do.  In doing so, Plaintiff would evaluate specific jobs and submit a price for the work to be performed.

Beginning in April 2005, Plaintiff performed tasks from time to time throughout

4

Turtle Rock Apartments as an independent contractor.[2]   He was not paid hourly for his work at Turtle Rock Apartments, but rather charged Turtle Rock Trust a fee for the services he provided.  For the independently contracted work at Turtle Rock Apartments, payment was made as requested by Plaintiff.  Defendants contend that Plaintiff was in control of his own potential profit or loss based upon what jobs he chose to undertake at Turtle Rock Apartments, and Turtle Rock Trust did not require Plaintiff to perform any of the work requested.  Moreover, Plaintiff could and did refuse to perform work at Turtle Rock Apartments.  While Plaintiff did perform various tasks for Turtle Rock Trust over a period of years prior to his arrest and incarceration, he was never required to do so and at times other independent contractors were used.  Turtle Rock Trust paid Plaintiff for services rendered and provided him with a yearly federal tax Form 1099-MISC statement showing the amount of money paid to him for his services.

Defendants contend that Plaintiff was never entitled to overtime because his hours at Woodland Commons did not exceed 40 in any given week and he was an independent contractor for the duties performed on behalf of Turtle Rock Trust.  Defendants note that

---

[2]Richard Davis asserts:

The reason Turtle Rock did not require a full-time maintenance worker is that the property was mostly maintained by myself, with Mr. Wade occasionally performing specific maintenance work on his own or assisting me with odd jobs. Furthermore, as Turtle Rock was located near my home I would receive calls for needed maintenance from the tenants and the majority of the time would address the issue myself as well as performed the snow plowing as needed. While Mr. Wade did perform work for Turtle Rock, I remained the primary provider of maintenance services at Turtle Rock.

Given that Turtle Rock did not need a full-time maintenance worker I merely offered Mr. Wade certain projects at the property as an independent contractor on an as needed basis only. Mr. Wade's work at Turtle Rock included projects such as replacement of building siding, replacement of water heaters and furnaces, repair to wood decking and sidewalks, tile work in bathroom and kitchens, re-seeding of lawns, tree removal and tree plantings.

when Plaintiff was paid by either Woodland Trust/Wood Commons, LLC or Turtle Rock

Trust, or when his payment information was reported on federal tax W-2 Wage and Tax

Statements and Form 1099-MISC statements provided to Plaintiff, he did not object or

complain that he was underpaid, not paid the proper amount, or paid in an improper form.

### b.    Plaintiff's Factual Assertions[3]

In early April 2005, Plaintiff answered a newspaper advertisement seeking a full-

time maintenance worker.  He called the listed phone number and spoke to Richard B.

Davis.  Davis asked Plaintiff to come to Woodland Commons apartments in Stone Ridge,

New York to fill out an application.  After several days, Plaintiff received a call from Davis

who asked him to come to an interview at Woodland Commons apartments on April 11,

2005.  Plaintiff was interviewed by Davis and was told he would be paid $13.00 an hour,

and "[t]hat his compensation would be split because he would eventually be required to

work at Turtle Rock Apartments" in New Paltz, New York.  Plaintiff was hired that day but

"was not told that he was being hired by either Woodland or Turtle Rock."  Plaintiff

understood that he was "simply hired by Richard B. Davis."[4]

Plaintiff commenced his employment on April 11, 2005.  He was told by Richard B.

Davis and Rena Kowliski, Defendants' manager, "that he was expected to work at least 40

hours a week and that he could work as many hours as he wanted."  He understood that

he was required to report to Kowliski and received work orders from her to do work at both

apartment complexes.  Plaintiff was told "he would be placed on a payroll and the

[3]Plaintiff's factual assertions are taken from his Affidavit in Opposition to Summary Judgment, dkt. # 41.

[4]Plaintiff maintains in this litigation that Woodland Trust/Woodland Commons, LLC and Turtle Rock Trust acted as his joint employer.

6

company would submit $400.00 to the payroll company on a bi-weekly basis," and that at the end of each month he would receive payment from Turtle Rock Trust for the amounts owed for his remaining wages.

Plaintiff was "expected to be on call twenty-four hours a day to address tenants['] complaints in emergency situations, such as no heat, no air conditioning, lock-outs, and snow removal during the winter months, etc."  Plaintiff was provided a cellular telephone which he was required to have with him at all times, and he understood that tenants from both apartment complexes were given the telephone number for emergency purposes. He was also required to perform general maintenance work at both apartment complexes such as cutting grass, plowing snow, responding to tenants' emergency situations, reading gas and/or water meters, and preparing vacated apartments for new tenants.  Plaintiff was authorized to purchase materials for both apartment complexes at a local hardware retailer using an account maintained by Defendants, and was reimbursed for the gas he put into Defendants' truck used at both complexes.

Plaintiff contends that, when combining the time he worked at Woodland Commons with that at Turtle Rock Apartments, he regularly worked in excess of 40 hours per week but was not paid at an overtime rate for any of his work.  Rather, he was paid at the regular hourly rate of $13.00, and later $14.00, for all of his work.  Plaintiff's pay came in two forms.  He received biweekly paychecks from the Woodland Trust or Woodland Commons, LLC account, and he received a lump sum payment from the Turtle Rock Trust account each month.  The monthly lump sum payment was the difference between the total amount owed calculated on an hourly basis minus the amount in the biweekly checks

7

for that month.[5]  This practice continued during his employment and until he was arrested

and incarcerated on March 4, 2009.  After his arrest and incarceration, Defendants failed

to pay his wages for part of February and the beginning of March 2009.

        Plaintiff attached to his affidavit copies of the federal W-2 Wage and Tax

Statements that he received from Woodland Trust and Woodland Commons, LLC; copies

of the federal Forms 1099-MISC statements that he received from Turtle Rock Trust; and

a copy of one Form 1099-MISC statement that he received from Woodland Trust in 2007.

See dkt. 41-1, pp. 95-97, 100-101, 105-110, 112-117.  Even though he received federal

tax Form 1099-MISC statements, he contends that he "contracted out only the changing of

carpets at both Woodland and Turtle Rock" and that the rest of the work he did at both

locations was calculated on an hourly rate.  Plaintiff asserts that he did not act as an

independent contractor when he did the work at Turtle Hill Apartments, and he "never

complained [about the payment situation] because he was being paid at a rate of $13.00

per hour when he was hired and thereafter in 2007, received a one dollar an hour raise."

## IV.    DISCUSSION

        The FLSA was enacted by Congress "to protect all covered workers from

substandard wages and oppressive working hours, 'labor conditions [that are] detrimental

to the maintenance of the minimum standard of living necessary for the health, efficiency

and general well-being of workers.'" Barrentine v. Arkansas–Best Freight Sys. Inc., 450

U.S. 728, 739 (1981) (quoting 29 U.S.C § 202(a))(footnote omitted).  Section 207 specifies

---

[5]Plaintiff concedes that his biweekly paycheck from Woodland Trust/Woodland Commons, LLC
started out at $400.00, was increased to $1,120.00 biweekly, and then reduced to $600.00 biweekly.  He
contends, however, that his monthly checks from Turtle Rock Trust fluctuated in direct relation to the
amounts he received from Woodland Trust/Woodland Commons, LLC.

that an employer must pay employees who work in excess of forty hours during a workweek for the excess hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); see Santillan v. Henao, --- F. Supp.2d ----, 2011 WL 4628752, at *3 (E.D.N.Y. Sept. 30, 2011).  Employers in violation of this provision "shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

> New York's Labor Law is the state analogue to the federal FLSA. . . . [I]t ... mirrors the FLSA in compensation provisions regarding . . . overtime . . . . See N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2 (same methods as employed in the FLSA for calculating overtime wages). The New York Labor Law also expressly provides that employees are entitled to recover all unpaid wages. See N.Y. Lab. Law § 198(3) . . . . One notable difference in New York law is that it contains a "spread of hours" provision which allows a plaintiff to recover an extra hour's worth of pay at the minimum wage for each day that an employee works in excess of ten hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4.  Section 663 of the Labor Law also expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise due to him or her under the statute. N.Y. Lab. Law § 663(1).

Santillan, 2011 WL 4628752, at *4.

Pursuant to the version of NYLL § 198(1–a) in effect during the time covered by this lawsuit, a plaintiff is entitled to liquidated damages equal to 25% of the total amount of wages due if the employer's failure to pay compensation under the NYLL was "willful." N.Y. Lab. Law § 198(1–a) (McKinney 2008); see Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 and n. 9. (2d Cir. 2011).[6]

---

[6]Section 198(1–a) was amended in 2009 and 2010 after Plaintiff ended his employment, and now provides that an employee who prevails on a wage claim is entitled to liquidated damages equal to 100% of the amount of wages found to be due "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1–a) (McKinney 2011); see also id. § 663(1).

### a.      Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on three issues, which the Court will address *seriatim*.

### 1.      Defendants' Statute of Limitations Affirmative Defense

Plaintiff seeks to dismiss Defendants' Ninth Affirmative Defense which asserts that Plaintiff's claims are barred by the applicable statutes of limitations.  See Answer, Ninth Affirmative Defense.  The statute of limitations for a FLSA claim is two years from the date the cause of action accrued, see Doo Nam Yang v. ACBL Corp., 427 F. Supp.2d 327, 337 (S.D.N.Y. 2005)("A cause of action under the FLSA accrues on the regular payday immediately following the work period for which services were rendered and not properly compensated ."), unless the employer willfully violated the FLSA in which case the statute of limitations is three years. See 29 U.S.C. § 255(a); Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009)("The effect of a willfulness finding is to extend the statute of limitations period from two to three years.").

> An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the Act. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed.2d 115 (1988); see also Herman v. RSR Sec. Svcs. Ltd., 172 F.3d 132, 141 (2d Cir.1999).  Mere negligence is insufficient. McLaughlin, 486 U.S. at 133, 108 S. Ct. 1677. . . .  The burden is on the employee to show willfulness. Herman, 172 F.3d at 141.

Young, 586 F.3d at 207.

Plaintiff asserts that Defendants willfully violated the FLSA in three material respects.  One, they failed to pay proper overtime compensation; two, they failed to pay Plaintiff his wages for part of February and four days of March, 2009; and three, they

failed to keep proper time records as required by the FLSA[7] and New York Labor Law.[8]

Taking the facts in the light most favorable to Defendants, there is insufficient basis to dismiss the Affirmative Defense as it applies to Plaintiff's FLSA claim of unpaid overtime compensation. Defendants have provided sworn testimony that Plaintiff did not work over forty hours in any week at Woodland Commons,[9] and that he worked as an independent contractor at Turtle Rock Apartments. Thus, there is an insufficient basis to conclude that Defendants violated the FLSA's overtime provision let alone willfully violated it. See 29 U.S.C. § 207(a)(1)(requiring overtime compensation only when an employee

---

[7]Under the FLSA, every employer is required to "make, keep, and preserve such records of the persons employed by [it] and of the wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c).

> Although the terms "wages" and "hours" each have a clear meaning, the term "other conditions and practices of employment" is not entirely self-defining, and therefore has been given content by regulations promulgated by the Department of Labor. These regulations list the specific conditions and practices of employment all employers are required to document. See 29 C.F.R. §§ 516.2, 516.5, 516.6. These include: employees' regular hourly rate, hours worked each workday, total hours worked each week, total additions or deductions from wages, total wages paid each pay period, the date of payment, and the pay period covered by each payment.

Solis v. Cindy's Total Care, Inc., 2012 WL 28141, at *17 (S.D.N.Y. Jan. 5, 2012).

[8]Santillan v. Henao, --- F. Supp.2d ----, 2011 WL 4628752, at * 4 (E.D.N.Y. Sept. 30, 2011)("Like its federal counterpart, the Labor Law requires that employers maintain records for their employees who fall under the Labor Law's wage protections.")(citing N.Y. Lab. Law §§ 195, 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 138–3.1 (specifying content of employer's records)).

[9]Both parties agree that Plaintiff was required to carry a cellular telephone and be "on call" for tenants' complaints, at least for Woodland Commons tenants. The U.S. Department of Labor's regulations promulgated under the FLSA provide that "[a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'" 29 C.F.R. § 785.17. "When an employee is not confined to his home or any particular place and may come and go as he pleases, the 'hours spent 'on call' are not considered as hours worked.'" Daniels v. 1710 Realty LLC, 2011 WL 3648245, at *5 (E.D.N.Y. Aug. 17, 2011)(quoting Nonnenmann v. City of New York, 2004 WL 1119648 (S.D.N.Y. May 20, 2004) and citing 29 C.F.R. § 778.223 and Singh v. City of New York, 524 F.3d 361, 368, n. 4 (2d Cir. 2008) (employees may seek compensation for time spent "on call" when their employer restricts their ability to use time freely for their own benefit). It is unclear on this record whether Plaintiff is entitled to be compensated for time he was on call, or whether he is claiming such time.

11

works more than 40 hours in a week); <u>Brock v. Superior Care, Inc.</u>, 840 F .2d 1054, 1058 (2d Cir. 1988) (independent contractors are not covered by the FLSA); <u>see also</u> Discussion, *infra*, regarding "joint employers."

Assuming that there was a violation of the FLSA in this regard, Plaintiff has not provided sufficient evidence to establish that the violation was willful.  The fact that Bradley Davis is an attorney does not establish a willful violation.  Moreover, there exist questions of fact as to the number or hours Plaintiff worked for both entities and Defendants' understanding of the capacity in which Plaintiff worked for Turtle Rock Trust. <u>See</u> <u>Kuebel</u>, 643 F.3d at 366 (Because questions of fact existed as to employer's knowledge whether plaintiff was entitled to overtime compensation, "the question of willfulness for FLSA statute of limitations purposes is properly left to trial.").

As to Plaintiff's claim that he was not paid his wages for parts of February and March 2008, Richard Davis asserts that Plaintiff was paid all of the wages that he was due.  Thus, a question of fact exists as to whether there was a violation in this regard, and if there was, whether it was a willful violation.

As to Plaintiff's claim that his employer violated the FLSA's record keeping requirements, and assuming such a violation occurred, there is a question of fact as to whether the violation was willful.  Defendants have asserted that it understood that Plaintiff was a salaried employee who received a set amount of compensation every two weeks.  Even if this arrangement violated the FLSA's record keeping requirements, it remains a question of fact as to whether it was a willful violation.

Moreover, and assuming, *arguendo,* that there were willful violations of the FLSA, Plaintiff commenced this action on December 23, 2009.  Any FLSA claim that accrued

before December 23, 2006 would be subject to Defendants' affirmative defense of the statute of limitations.  Thus, the motion in this regard is denied.

Plaintiff's New York Labor Law claims are governed by a six year statute of limitations. See Winfield v. Citibank, N.A., —— F. Supp.2d ——, 2012 WL 423346, at *11 (S.D.N.Y. Feb.9, 2012) ("[T]here are claims [for unpaid overtime] under New York law and [ ] these claims, unlike the FLSA claims, have a six-year statute of limitations."); Dragone v. Bob Bruno Excavating, Inc., 45 A.D.3d 1238, 847 N.Y.S.2d 251, 253 (N.Y. App. Div., 3rd Dept., 2007) ("Under Labor Law § 198(3), the limitations period to recover on such claims is six years.").  The Ninth Affirmative Defense is directed at both the FLSA and state law claims.  The Court will not parse out portions of the affirmative defense that will stand, but the parties should understand that at trial the question of the applicable statute of limitations will apply only to the FLSA claims.

### 2.   Joint Employers

Next, Plaintiff argues that he is entitled to summary judgment finding that Woodland Trust and, later, Woodland Commons, LLC, acted with Turtle Rock Trust as "joint employers."

The FLSA defines an "employer" as an entity "acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d).[10]   An employment relationship exists under the FLSA when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir.1999).  "An entity need not possess

---

[10]The definition of "employ" under the FLSA "includes to suffer or permit to work." 29 U.S.C. § 203(g).

'formal control' over a worker to qualify as an employer; the entity may simply exercise

'functional control' over the worker in question." <u>Paz v. Piedra</u>, 2012 WL 121103, at * 4

(S.D.N.Y. Jan. 12, 2012)(citing <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 72 (2d Cir.

2003)).  "Factors relevant to determining control over a worker's employment include

'whether the alleged employer (1) had the power to hire and fire the employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employment records.'" <u>Id.</u>

(quoting <u>Herman</u>, 172 F.3d at 139).  "No one of the four factors standing alone is

dispositive," <u>Herman</u>, 172 F.3d at 139, and a court  should consider "any other factors it

deems relevant." <u>Zheng</u>, 355 F.3d at 71–72.[11]

   If the facts demonstrate that the employee is jointly employed by more than one

employer, then "all of the employee's work for all of the joint employers during the

workweek is considered as one employment for purposes of [the FLSA]".  29 C.F.R. §

791.2(a);  <u>Zheng</u>, 355 F.3d at 66 (citing 29 C.F.R. § 791.2).  "When two or more entities

---

[11]As the Southern District noted in <u>Paz</u>,

The Second Circuit in <u>Zheng</u> applied six additional factors, which overlap somewhat with the
four <u>Herman</u> factors, that the court found pertinent to the question of whether a general
contractor exhibited functional control over the employees of a subcontractor:

> (1) whether [the general contractor's] premises and equipment were used for the plaintiffs'
> work; (2) whether the [subcontractor] had a business that could or did shift as a unit from one
> putative joint employer to another; (3) the extent to which plaintiffs performed a discrete
> line-job that was integral to [the general contractor's] process of production; (4) whether
> responsibility under the contracts could pass from one subcontractor to another without
> material changes; (5) the degree to which the [general contractor] or [its] agents supervised
> plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [general
> contractor].

355 F.3d at 72; <u>accord</u> <u>Barfield v. New York City Health and Hospitals Corp.</u>, 537 F.3d 132, 142 (2d
Cir. 2008) (recognizing "different sets of relevant factors based on the factual challenges posed by
particular cases").

14

operate as joint employers of a given worker, each employer is jointly and severally liable

to those affected employees for the FLSA violations of all other joint employers." Paz,

2012 WL 121103, at *5; see Ansoumana v. Gristede's Operating Corp., 255 F. Supp.2d

184, 186 (S.D.N.Y. 2003)("Both Duane Reade and the Hudson/Chelsea defendants were

the 'employers' of the plaintiffs under [the FLSA and the NYLL], [and are] jointly and

severally obligated for underpayments of minimum wage and overtime...."); 29 C.F.R. §§

791.2(a)(b).

> A joint employment relationship does not exist if the alleged joint employers
> "are acting entirely independently of each other and are completely
> disassociated with respect to the employment of a particular employee." Id. §
> 791.2(a).  A joint employment relationship may exist, however, if the putative
> joint employers are not completely disassociated with respect to the
> employment of a particular worker. See id. §§ 791.2(a)(b).  Determining
> whether two entities jointly employ a particular worker involves the same
> application of the Herman/Zheng factors as is required to determine whether
> a single entity is the employer of a worker. See Severin v. Project OHR, Inc.,
> 2011 WL 3902994, at *6–7 (S.D.N.Y. Sept. 2, 2011); Diaz v. Consortium for
> Worker Educ., Inc., 2010 WL 3910280, at * 2–4 (S.D.N.Y. Sept. 28, 2010).

Paz, 2012 WL 121103, at *5.  "New York Labor Law embodies the same standards for

joint employment as the FLSA." Chen v. St. Beat Sportswear, Inc., 364 F. Supp.2d 269,

278 (E.D.N.Y.2005) (citing cases).

Crediting the assertions made in Richard Davis's affidavit, as the Court must do on

this motion, Plaintiff has not established his entitlement to summary judgment finding that

Woodland Trust / Woodland Commons, LLC and Turtle Rock Trust were joint employers.

According to Davis, Plaintiff elected what work he wanted to do at Turtle Rock

Apartments, set his own fee, and determined his own profit from the work he decided to

undertake.  Although Plaintiff asserts that this was not the situation, the receipt of federal

tax Form 1099-MISC statements for the years that Plaintiff contends that he was an hourly

employee at Turtle Rock Apartments, together with Davis's affidavit, provides sufficient evidence to create a question of fact on this issue. Thus, this portion of the motion is denied.

### 3. Whether Plaintiff was a Full Time Employee or an Independent Contractor for Defendants

Lastly, Plaintiff argues that he is entitled to summary judgment finding that he was not a salaried employee at Woodland Commons, that he was not an independent contractor at Turtle Rock Apartments, and that he was a full time employee of the "joint employers" Woodland Trust / Woodland Commons LLC and Turtle Rock Trust.

In order to be considered a "salaried" employee pursuant to the FLSA, the employee must receive the same pay each period "which amount is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602.   With regard to salaried employees, New York Labor Law overtime claims are analyzed similarly to FLSA claims.  Wong v. Hunda Glass Corp., 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010).   Defendants have asserted that Plaintiff did not work over 40 hours in any week at Woodland Commons and was paid the same amount each biweekly period depending on the level of agreed upon compensation for the work he was expected to perform at the time.[12]  Plaintiff concedes that he received the same amount each biweekly period as Defendants contend, see Pl. Aff, ¶¶ 28-42, but argues that his classification as a salaried employee originally paid $400.00 for a two week period is "not

---

[12]According to Defendant, when Plaintiff first started, he was paid $400.00 biweekly and this amount was increased to $1120.00 biweekly as his responsibilities and duties increased, but later reduced to $600.00 biweekly. Plaintiff concedes he was paid these amounts, but contends that the amounts represented only a portion of his combined hourly wages for his work at Woodland Commons and Turtle Hill Apartment, and no part of the payment was calculated at the time and a half rate.

16

practicable." Pl. Mem. L. p. 20.

For salaried employees not deemed "exempt" under 29 U.S .C. § 213(a)(1), an overtime rate is calculated by "dividing the employee's weekly compensation by the number of hours for which that compensation is intended." Wong, 2010 WL 2541698, at *2. "Unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate," the law presumes that the weekly salary covers 40 hours. Id. Whether the arrangement that Plaintiff had at Woodland Commons was impracticable does not entitle Plaintiff to judgment, and it remains a question of fact as to whether he performed work in a weekly period that would entitle him to more compensation than he received biweekly. Plaintiff's motion for judgment on this issue is denied.

To determine whether Plaintiff was an employee or a independent contractor while working at Turtle Rock Apartments, the Court considers five factors from the economic realities test :

> (1) the degree of control exercised by the employer over the worker[], (2) the
> worker['s] opportunity for profit or loss and [his] investment in the business,
> (3) the degree of skill and independent initiative required to perform the
> work, (4) the permanence and duration of the working relationship, and (5)
> the extent to which the work is an integral part of the employer's business.

Brock v. Superior Care, Inc., 840 F.2d 1054, 1058–59 (2d Cir.1988)(citing United States v. Silk, 331 U.S. 704, 716 (1947)).

Defendants assert that Plaintiff took the independent initiative to bid on the jobs at Turtle Rock Apartments which he believed he had the skill and ability to perform; submitted bids only for the work projects he wanted to perform and declined others; and retained the ability to earn a profit from his work depending on his bid and the nature of

the work on each job.  Defendants further argue that the work Plaintiff performed at Turtle Rock Apartment, while an integral part of the employer's business, was also performed by other contractors.  In light of these facts, accepted as true for purposes of the motion, summary judgment seeking a designation of Plaintiff as an employee for Turtle Rock Trust and not an independent contractor is denied.

Finally, for the reasons discussed above, Plaintiff's motion for a judgment finding that Woodland Trust / Woodland Commons, LLC and Turtle Rock Trust were joint employers is denied.

### b.   Defendants' Motion for Summary Judgment

Defendants' motion for summary judgment is, when boiled to it core, an argument that Plaintiff's factual contentions of working in excess of forty hours a week for the "joint employers" Woodland Trust / Woodland Commons, LLC and Turtle Rock Trust are without credence.  However, the function of the Court on a motion for summary judgment is to determine whether material questions of fact exist, not to decide issues of credibility. See Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 558 (2d Cir. 2001) ("The function of the district court in considering the motion for summary judgment is . . . only to determine whether there is a genuine issue to be tried.").  Based on the allegations in Plaintiff's affidavit, which the Court must accept as true for purposes of Defendants' motion, the Court finds no reason to dismiss any part of Plaintiff's action. Therefore, Defendants' motion is denied.

**III.     CONCLUSION**

For the reasons set forth above, Plaintiff's motion for partial summary judgment

[dkt. # 26] and Defendants' cross-motion for summary judgment [dkt. # 34] are **DENIED**.


**IT IS SO ORDERED**

**Dated: March 19, 2012**


Thomas J. McAvoy
Senior, U.S. District Judge